IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROLF ERIK CARLSON,

       Plaintiff,

v.                                                                   No. 1:17-cv-00784-RB-GJF

UNITED STATES DEPARTMENT
OF ENERGY,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rolf Carlson lost his Department of Energy (DOE) security clearance in 2010. After attempting administrative appeals to amend his personnel security file (PSF) with little success, Carlson sued Defendant DOE in federal court. He alleged violations of the Privacy Act of 1974, seeking to add documents to his PSF and prompt DOE to investigate his file for additional errors. In October 2018, the Court dismissed all but one of his claims and allowed him to file an amended complaint focusing on the remaining issue. (*See* Doc. 42.) In August 2019, the Court dismissed this final claim as moot when it was revealed that the documents Carlson wished to add had been in the PSF since July 2015. (*See* Doc. 63.) Carlson now brings three post-judgment motions requesting relief from the Court's previous decisions. Considering that Carlson merely relitigates previous issues, the Court will not grant relief from the judgment.

**I.**        **Background**

Carlson originally filed his complaint pro se in federal court on July 31, 2017, alleging that the DOE violated the Privacy Act, 5 U.S.C. § 552a, by denying requests to amend his PSF. (Doc. 1.) On October 26, 2018, the Court issued a Memorandum Opinion and Order (2018 Opinion)

dismissing Carlson's claims brought under section 552a(g)(1)(C) (failure to maintain adequate records) and 552a(g)(1)(D) (any other violation of the Privacy Act) because Plaintiff failed to show that DOE's actions were "willful and intentional." (Doc. 42 at 10 (citing 5 U.S.C. 552a(g)(4); *Gowan v. U.S. Dep't of Air Force*, 148 F.3d 1182, 1187–88 (10th Cir. 1998)).) The Court ruled, however, that Carlson pleaded sufficient facts to move the 552a(g)(1)(A) claim forward. (*Id.* at 9–10.) This provision creates a federal cause of action when an agency "makes a determination under [the subsection of the Privacy Act governing access to records] not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection . . . ." 5 U.S.C. 552a(g)(1)(A). Its implementing provision provides that "[i]f the DOE refuses to amend a record or fails to review an amendment request[,] . . . the court may order the DOE to make the amendment and award reasonable litigation costs and attorney's fees." 10 C.F.R. § 1008.15(b).

After Carlson filed his amended complaint (Doc. 47 (Am. Compl.)), the DOE moved to dismiss the section 552a(g)(1)(A) claim (Doc. 48). Carlson's sole request for relief asked "DOE to perform the amendments to Plaintiff[']s PSF and the investigations of contested information . . . ." (Am. Compl. ¶ 54.) On August 23, 2019, the Court issued another Memorandum Opinion and Order (2019 Opinion), which held that because the four records at issue were placed in Carlson's PSF in 2015, "this case is moot and the Court lacks subject matter jurisdiction over Plaintiff's remaining claim." (Doc. 63 at 8.)

Before the Court now are Carlson's Motion to Alter or Amend Judgment under Federal Rule of Civil Procedure 59(e), related to the 2019 Opinion (Doc. 64); Motion for Relief from Judgment under Rule 60(b)(1) related to the 2018 Opinion (Doc. 67); and Motion to Correct

Clerical Error under Rule 60(a) related to the Court's characterization of his employment status with DOE (Doc. 65). The DOE did not respond to the three motions.

## II.     Motion to Alter or Amend Judgment Under Rule 59(e)

Carlson filed a Motion to Alter or Amend Judgment under Rule 59(e) on September 20, 2019, arguing that the Court mischaracterized his request to both amend and investigate his PSF. (Doc. 64 at 8.) A party can file a motion to alter or amend a judgment "no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). Such relief is only granted under limited circumstances, including: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)). Rule 59(e) motions, however, are not appropriate to amend minor errors; they "should be granted only to correct *manifest* errors of law or to present newly discovered evidence." *TCR Sports Broad. Holding, LLP v. Cable Audit Assocs., Inc.*, 674 F. App'x 805, 809 (10th Cir. 2017) (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997)). When parties merely repeat old arguments, the district court should deny the motion. *See Servants of the Paraclete*, 204 F.3d at 1012; *see also Rubin v. Jenkusky*, No. CIV 13-0047 RB/WPL, 2014 WL 11430912, at *1 (D.N.M. Mar. 13, 2014) ("Courts routinely deny Rule 59(e) motions that attempt to rehash old arguments or re-argue more persuasively issues already presented to the Court." (citations omitted)).

Carlson filed the motion within the 28-day timeframe, arguing that the mootness determination in the 2019 Opinion "is predicated on a mistaken understanding of [the statutory framework], resulting in an error of law." (Doc. 64 at 5.) The 2019 Opinion addressed Carlson's remaining section 552a(g)(1)(A) claim, regarding amendments to his PSF. Again, the Court held

3

that because the documents at issue were added to the PSF in 2015, no dispute remained. (Doc. 63 at 7–8.) Carlson now claims that his amended complaint sought relief beyond "order[ing] DOE to perform the amendments to Plaintiff[']s PSF . . . ." (Doc. 47 ¶ 54.) His argument turns on the notion that "amend" in section 1008.15(b) equates to section 552a(d)(3)'s language: "amend the record *in accordance with the request*." (*Id.* (emphasis added).) From this, he suggests that the 2019 Opinion took a limited view on the remedies available to the Plaintiff. (*See id.* at 8)

The Court reads this motion as Carlson seeking some additional remedy beyond the inclusion of the four documents in his PSF; though it is still not clear precisely what he desires. In the Court's review of the briefing and pleadings prior to the 2019 Opinion, Carlson sought to add the four documents but acknowledged that they were already in the PSF. (Doc. 50 at 1.) Per his amended complaint, he also claimed that investigations into his PSF were not performed. (*Id.* at 3.) The DOE argued that no investigations were necessary since the PSF had already been amended (Doc. 52 at 2), and the Court agreed (Doc. 63 at 6–7). The Court believes that Carlson's current motion—in comparing the language of sections 1008.15(b) and 552a(d)(3)—is in large part rehashing the issues analyzed in the 2019 Opinion, and if not, Carlson has certainly not expressed any relevant differences.

To meet the standard in Rule 59(e), courts have required plaintiffs to demonstrate not only that an error of law was made, but also that relief from judgment prevents manifest injustice. *See TCR Sports*, 674 F. App'x at 809. Carlson describes how one reading of sections 1008.15(b) and 552a(d)(3) leads to a more expansive understanding of what it means to *amend the record* under the Privacy Act, but even taking his interpretation, the Court ends up with the same result. Amending the record in *accordance with the plaintiff's request* does not mean Carlson has unlimited authority to order investigations into his record or shoehorn previously dismissed claims

into this motion. Carlson requested that four documents be added to the PSF. They were added. There is nothing more to do. After considering Carlson's motion and the relevant law, the Court believes that the analysis proffered in the 2019 Opinion is still correct, and the Motion to Alter or Amend the Judgment is denied.

### III.   Motion for Relief from Judgment Under Rule 60(b)(1)

Carlson next filed a Motion for Relief From Judgment under Rule 60(b) on October 25, 2019, arguing that due to his excusable neglect, he missed evidence that would have altered the Court's ruling in the 2018 Opinion. (Doc. 67 at 1.) The Court "may relieve a party or its legal representative from a final judgment . . . [for] mistake, inadvertence, surprise, or excusable neglect . . . ." Fed. R. Civ. P. 60(b)(1). These motions must be brought "within a reasonable time . . . no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). "Relief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances." *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co., Inc.*, 909 F.2d 1437, 1440 (10th Cir. 1990). Further, the alleged mistake "must be excusable, meaning that the party was not at fault." *Payne v. Tri-State Careflight, LLC*, 322 F.R.D. 647, 669 (D.N.M. 2017) (citing *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)). In *Pioneer*, the Supreme Court highlighted four factors when evaluating excusable neglect: (1) prejudice to the nonmoving party; (2) the delay's impact on judicial proceedings; (3) whether the delay was within the movant's control; and (4) whether movant acted in good faith. 507 U.S. at 395. These factors are highly contextual and require courts to consider the surrounding circumstances of the alleged neglect. *See United States v. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004). As an example, blatant attorney errors made at the expense of the moving party might warrant relief from judgment, but litigation tactics do not. *See Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 577 (10th Cir. 1996).

Carlson filed this motion within the one-year timeline and claims excusable neglect "for failure to point out the evidence available in document 28 that Defendant *willfully and intentionally* maintained inaccurate and incomplete records and that those records proximately caused an adverse determination to Plaintiff." (Doc. 67 at 3 (emphasis added).) In the 2018 Opinion, the Court dismissed the 552a(g)(1)(C)–(D) claims against DOE because Carlson failed to marshal evidence showing that DOE "willfully and intentionally" maintained inaccurate records. (Doc. 42 at 10.) Carlson now suggests that the overt acts described in his "Ex-Parte Motion to File Under Seal Crime Tip" (Ex Parte Motion) (Doc. 28) offer such evidence. (Doc. 67 at 3.) Specifically, he claims that "DOE staff members fabricated and falsified the adjudicative basis for the suspension of Plaintiff's security clearance in retaliation for Plaintiff exercising his First Amendment rights by Plaintiff reporting that someone had drugged Plaintiff in the workplace . . . ." (*Id.* at 7.) He claims that these allegations are provable; he acted in good faith; and the DOE would not suffer prejudice. (*Id.* at 7–10.) Carlson also claims that the delay in making this argument is the result of the lengthy record. (*Id.* at 13 (citing Doc. 28).)

Relief from a judgment is an extraordinary remedy, and may only occur in exceptional circumstances. *See Bud Brooks Trucking, Inc.*, 909 F.2d at 1440. Even assuming that Carlson's references to the evidence in his Ex Parte Motion demonstrate the requisite intent—which the Court does not—he fails to meet the criteria under *Pioneer*. First, relief for excusable neglect must avoid prejudice to the nonmoving party. Yet it is difficult to see how the Court could grant Carlson's motion without affecting the DOE. When DOE filed its first Motion to Dismiss (Doc. 22), it discussed the lack of *willful and intentional* conduct, bringing this standard to Carlson's attention. (Doc. 23 at 10–11.) What is more, Carlson filed his response in conjunction with his Ex Parte Motion and references these same "overt acts" without connecting them to the standard.

6

(Doc. 26 at 2.) This information was not buried in an endless pile of discovery documents; rather, Carlson had access to and knowledge of the document's content the entire time. Raising this argument now affects the DOE in prolonging the litigation and forcing it to reconsider issues it addressed at the outset.

This brings the Court to the second *Pioneer* prong—the delay's impact on judicial proceedings. The Court previously filed two opinions related to Carlson's three Privacy Act claims over the course of nearly two years. While Carlson is correct that he filed this Rule 60(b) motion within the proper timeframe, he filed his Ex Parte Motion in May 2018. (Doc. 28.) Its 116 pages are not so indigestible that finding some critical kernel of information alleging DOE intent should have taken two years. Courts have limited resources and aim to answer motions as quickly and efficiently as possible. Carlson's current motion amounts to a third iteration of the same issues. As such, this delay certainly hinders judicial operations.

Third, Carlson proceeds pro se and was in control of all material presented to the Court. He had possession of the information submitted with his Ex Parte Motion for years, as well as knowledge regarding the required standard. Finally, the Court does not believe that Carlson acted in bad faith in filing this motion. Parties in litigation have deep personal interests at stake and take every reasonable opportunity to make their cases. But while Carlson may not have filed this motion as part of some disingenuous litigation strategy, he could have and should have made these specific arguments earlier. In all, these factors weigh against granting relief under Rule 60(b)(1).

The analysis above presumes that Carlson presented new information of *willfulness and intentionality*, such that it would alter the Court's 2018 Opinion. But in reviewing the Ex Parte Motion and the alleged overt acts, the Court again sees nothing to suggest that the DOE *willfully and intentionally* maintained inaccurate records. Carlson discusses a variety of different claims—

not brought in his complaint. While the alleged acts suggest that he disagrees with the DOE's records and conclusions, they do not show that DOE *intentionally* maintained inaccurate records. As a result, not only does Carlson fail the *Pioneer* test, but also his new allegations do not alter the Court's previous analysis from its 2018 Opinion. (*See* Doc. 42 at 10.) Therefore, the Court has no choice but to deny his Motion for Relief from Judgment under Rule 60(b)(1).

## IV.    Motion to Correct Clerical Error Under Rule 60(a)

Finally, Carlson moves the Court to make a correction to its 2018 Opinion. (Doc. 65.) That Opinion stated that, "In 2010, while Plaintiff was employed by the DOE, his security clearance was suspended." (Doc. 42 at 1). Carlson wishes to clarify that he was never employed by the DOE. (Doc. 65 at 1.) According to the Federal Rules of Civil Procedure, courts "may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice." Fed. R. Civ. P. 60(a).

At a scheduling conference on January 26, 2018, DOE Attorney Tim Martin confirmed that the DOE never employed Carlson. (*See* Doc. 14 at 3.) Thus, the Court will grant Carlson's request and will file an Amended Memorandum Opinion and Order to correct the language regarding his employment status.

**THEREFORE**,

**IT IS ORDERED** that Carlson's Motion to Alter or Amend Judgment Under Rule 59(e) (Doc. 64) is **DENIED**.

**IT IS FURTHER ORDERED** that Carlson's Motion for Relief from Judgment Under Rule 60(b)(1) (Doc. 67) is **DENIED**.

9

**IT IS FURTHER ORDERED** Carlson's Motion to Correct Clerical Error Under Rule 60(a) (Doc. 65) is **GRANTED**.

_____
**ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE**